**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JEFFREY MOLITOR, LAURA C. DE LA CABADA, STEVE CLARKE, and RUTH MAKI, individually and on behalf of all others similarly situated, | Case No. 1:16-cv-02106 |
| | Honorable Charles R. Norgle, Sr. |
| *Plaintiff,* | |
| v. | |
| MANASSEH JORDAN MINISTRIES, INC., a New York Religious Corporation, and YAKIM MANASSEH JORDAN, an individual, | |
| *Defendants.* | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL DEFENDANTS'
<u>RESPONSES TO OUTSTANDING WRITTEN DISCOVERY REQUESTS</u>**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND .................................................................................................2

I.    Factual and Procedural Background ........................................................2

II.   The Current Discovery Status ................................................................3

ARGUMENT .....................................................................................................5

I.    The Court Should Issue an Order Compelling Defendants' Production ....................5

II.   The Court Should Overrule Defendants' General and Boilerplate
Objections ........................................................................................7

     a.    The information sought by Plaintiffs is relevant.............................7

     b.    Defendants' objections that the requests are overly broad and
unduly burdensome are deficient ...............................................9

     c.    Defendants' objection to the definitions of certain terms likewise
fail ...............................................................................10

     d.    Defendants' confidentiality objections are improper ....................11

     e.    Defendants' privilege and work-product objections are likewise deficient....12

     f.    Defendants' general objections are improper ..............................13

III.   Defendants' Objections on the Prematurity of Class-wide Discovery are
Improper ..........................................................................................13

IV.   The Court Should Award Plaintiffs' Attorneys' Fees and Costs ................14

CONCLUSION ...................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*Damasco v. Clearwire Corp.*,
    662 F.3d 891 (7th Cir. 2011) ...........................................................14

*Patterson v. Avery Dennison Corp.*,
    281 F.3d 676 (7th Cir. 2002) ............................................................5

**UNITED STATES DISTRICT COURT CASES:**

*Arenson v. Whitehall Convalescent & Nursing Home, Inc.*,
    161 F.R.D. 355 (N.D. Ill. 1995)........................................................11

*De Falco v. Vibram USA, Inc.*,
    No. 12-cv-7238, 2013 WL 1122825 (N.D. Ill. Mar. 18, 2013) ......................14

*E & J. Gallo Winery v. Cantine Rallo, S.p.A.*,
    No. 04-cv-5153, 2006 WL 1652653 (E.D. Cal. June 13, 2006) .......................6

*Equity Indus. A-Rockville LLC v. 7900 Rockville, LLC*,
    No. 09-cv-0621, 2010 WL 1737915 (S.D. Ind. Apr. 27, 2010)........................6

*Fine Line Distrib., Inc. v. Rymer Meats, Inc.*,
    No. 09-cv-5685, 1994 WL 376283 (N.D. Ill. July 15, 1994) ...........................11

*Fudali v. Napolitano*,
    283 F.R.D. 400 (N.D. Ill. 2012)...................................................7, 9, 14

*Green v. Monarch Recovery Mgmt., Inc.*,
    997 F. Supp. 2d 932 (S.D. Ind. 2014) .................................................8

*In re Folding Carton Antitrust Litig.*,
    83 F.R.D. 260 (N.D. Ill. 1979).........................................................13

*In re Mercury Fin. Co. of Ill.*,
    No. 97-cv-3035, 1999 WL 495903 (N.D. Ill. July 12, 1999) ...........................11

*In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Trans. Act (FACTA) Litig.*,
    No. 08-ml-1980, 2010 WL 4942645 (C.D. Cal. 2010).....................................13

*Iosello v. Lawrence*,
    No. 03-cv-0987, 2004 WL 442609 (N.D. Ill. Mar. 5, 2004) ...........................11

*Kodish v. Oakbrook Terrace Fire Prot. Dist.*,
235 F.R.D. 447 (N.D. Ill. 2006)..................................................................5, 7

*Last Atlantis Capital, LLC v. AGS Specialist Partners*,
Nos. 04-cv-0397, 05-cv-5600, 05-cv-5671, 2013 WL 791422 (N.D. Ill. Mar. 4, 2013).....6

*Lawrence E. Jaffe Pension Plan v. Household Intern., Inc.*,
244 F.R.D. 412 (N.D. Ill. 2006)......................................................................12

*Lorillard Tobacco Co.v. Elston Self Serv. Wholesale Grosc., Inc.*,
259 F.R.D. 323 (N.D. Ill. 2009)......................................................................15

*Martin v. Bureau of Coll. Recovery*,
No. 10-cv-7725, 2011 WL 2311869 (N.D. Ill. June 13, 2011)...........................8

*Methodist Health Servs. Corp. v. OSF Healthcare Sys.*,
No. 13-cv-1054, 2014 WL 1612838 (C.D. Ill. Apr. 22, 2014)........................11

*Miller v. Wal-Mart*,
No. 13-cv-46, 2014 WL 4545710 (W.D.N.C. Sept. 12, 2014)........................10

*MSTG, Inc. v. AT&T Mobility LLC.*,
No. 08-cv-7411, 2011 WL 221771 (N.D. Ill. Jan. 20, 2011)............................5

*Muro v. Target Corp.*,
No. 04-cv-6267, 2006 WL 3422181 (N.D. Ill. Nov. 28, 2006) ........................12

*Novelty, Inc. v. Mtn. View Mktg., Inc.*,
265 F.R.D. 370 (S.D. Ind. 2009)......................................................................13

*RBS Citizens, N.A. v. Husain*,
291 F.R.D. 209 (N.D. Ill. 2013)......................................................................12

*Ritacca v. Abbott Labs.*,
203 F.R.D. 332 (N.D. Ill. 2010)......................................................................12

*Swift v. First USA Bank*,
No. 98-cv-8239, 1999 WL 1212561 (N.D. Ill. Dec. 15, 1999)..........................9

*Whiteamire Clinic P.A., Inc. v. Quill Corp.*,
No. 12-cv-5490, 2013 WL 5348377 (N.D. Ill. Sept. 24, 2013)....................8, 14

*Williams v. Lane*,
No. 87-cv-3647, 1991 WL 128636 (N.D. Ill. July 11, 1991) ............................6

*Wilstein v. San Tropai Condo. Master Assoc.*,
    189 F.R.D. 371 (N.D. Ill. 1999)...........................................................................5

*Wine & Canvas Dev. LLC v. Weisser*,
    No. 11-cv-01598, 2013 WL 5960900 (S.D. Ind. Sept. 23, 2013).......................7

**MISCELLANEOUS:**

47 U.S.C. § 227....................................................................................................1

Fed. R. Civ. P. 26...........................................................................................5, 12

Fed. R. Civ. P. 33...........................................................................................6, 13

Fed. R. Civ. P. 34...........................................................................................6, 13

Fed. R. Civ. P. 37.........................................................................................14, 15

## INTRODUCTION

This putative class action involves claims by Plaintiffs Jeffrey Molitor, Laura De La Cabada, Steve Clarke, and Ruth Maki ("Plaintiffs") that Defendants Manasseh Jordan Ministries, Inc. ("MJM") and Yakim Manasseh Jordan ("Jordan") (collectively, "Defendants") made incessant phone calls to thousands of persons in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). At issue now is Defendants' refusal to provide unquestionably relevant information and documents in response to Plaintiffs' discovery requests, both with respect to liability and class certification issues—the latter going entirely unanswered.

Much of the fact discovery in a typical TCPA case is not particularly complex or difficult, as the information needed to prove or disprove a plaintiff's case is fairly straightforward: who placed the calls at issue, how and with what equipment those calls were made,[1] who received the calls, whether the recipients consented to be called, and what policies the defendants had in place (or didn't) to ensure compliance with the TCPA. Despite the typically efficient process that accompanies fact discovery in these sorts of cases, Defendants have made it a priority to unnecessarily complicate things here.

Most relevant, while Plaintiffs propounded their discovery requests in August, Defendants have repeatedly refused to respond. They originally raised boilerplate objections and withheld all documents and information relating to individuals other than Plaintiffs. After multiple meet and confers Defendants finally produced additional documents, but only after asserting numerous baseless objections and missing self-imposed deadlines. Despite claiming that they completed their production on December 29, 2016—more than three months *after* their

---

[1]     In many cases—though it hasn't been an issue yet here—where the "rubber meets the road" is whether the particular dialing equipment in question meets the TCPA's definition of an "ATDS."

1

original response deadline—they have yet to provide some of the information that Plaintiffs need most to prosecute their claims.

In the end, Defendants have made clear that they will not comply with their obligations without a compelling order. As a result, Plaintiffs bring the instant motion requesting that the Court order Defendants to produce the requested documents and information and seeking all fees and costs associated with this motion.[2]

## BACKGROUND

### I.    Factual and Procedural Background.

Plaintiffs filed this action in state court on January 5, 2016, alleging that Defendants made illegal phone calls in violation of the TCPA, and Defendants removed the case to federal court on February 10th. (Dkt. 2.) Plaintiffs served their first sets of interrogatories and document requests to Defendants on August 17th. (Declaration of Courtney C. Booth ("Booth Decl.") at ¶ 2, attached as Exhibit 1.) In their requests, Plaintiffs sought information related to, *inter alia*, the calls (including who made them, how the phone numbers were collected, to whom and how they were made, how many were made, from which numbers they were made, and all call scripts and recordings), any records of prior express consent (an affirmative defense), whether the recipients requested to no longer receive calls, what policies and procedures were in place for compliance with the TCPA, Defendants' financial condition (as they claim they would never be able to satisfy a judgment here), and other complaints regarding Defendants' calling practices. (*Id.*)

After requesting an extension, Defendants responded to Plaintiffs' requests on October 3rd, raising primarily boilerplate objections regarding relevance, breadth, and burden, and

---

[2]    For ease of reference, Plaintiffs seek a compelling order specifically with regards to Jordan Ans. Molitor Interrog. No. 12 (attached as Exhibit 2); MJM Ans. De La Cabada Interrog. Nos. 2, 3, 7-11 (attached as Exhibit 3); Jordan Ans. De La Cabada Interrog. Nos. 8-13 (attached as Exhibit 4); MJM Resp. Molitor Req. Prod. Nos. 16-22, 27, 31, 32, 36-43 (attached as Exhibit 5); and Jordan Resp. Molitor Req. Prod. Nos. 9, 10, 23-32 (attached as Exhibit 6).

refused to provide the majority of information requested. (*Id.* ¶ 3.) In fact, many interrogatories and requests were merely objected to, with no actual answers at all, and others agreed to produce documents "if any" at some undisclosed time in the future. (*Id.*) Almost exactly one month later, Defendants produced a mere 76 pages of documents, including (i) nearly 40 pages of contracts with its telemarketing vendor, Ytel, Inc. (ii) the do-not-call policy available on its website, (iii) information related to MJM's religious tax exempt status and certificate of incorporation, (iv) call logs and entries related to Plaintiffs, (v) screenshots of prayer request webpages, and (vi) a single inquiry made to Ytel, Inc. (*Id.* ¶ 4.) In the end, upon reviewing the whole of Defendants' initial responses and production, the only information Plaintiffs could uncover was (i) that Jordan recorded the messages, (ii) that MJM was in charge of them, (iii) that Ytel, Inc. made the calls, (iv) that there were supposedly some opt-out mechanisms, and (v) the dates and times Plaintiffs received and/or placed calls to MJM. (*See generally* Exhibits 2-6.)

## II.    The Current Discovery Status.

Less than two weeks after Plaintiffs received Defendants' production, they prepared and sent a detailed letter outlining the discovery deficiencies and requesting a meet and confer. (Booth Decl. ¶ 5.) The following week, on November 22, 2016, the Parties participated in an extensive discussion, during which Plaintiffs explained the relevance of their requests, Defendants provided the bases for some of their objections, and the Parties were ultimately able to make some progress as to their discovery disputes. (*Id.* ¶ 6.) Plaintiffs also requested an extension of the discovery deadline to complete the meet and confer process and provide adequate time for oral discovery. (*Id.*) On November 29th, Defendants sent a letter memorializing the few additional documents they would produce (including a sampling of the recordings used in the calls and any internal or external do-not-call lists they had), as well as the

3

numerous documents and answers they would not. (*See* Dkt 22-2.) Defendants also specified that they believed they could produce those documents by December 16th—two weeks before the deadline to complete all fact discovery—and that they would oppose a request for an extension of the discovery deadline. (*Id.*)

On December 2nd, the Parties engaged in another meet and confer during which they agreed that a sampling of the audio recordings would likely be acceptable to respond to Plaintiffs' requests in that regard. (Booth Decl. ¶ 7.)  Defense counsel also agreed to communicate with her clients about further production and whether they would seek information from their third-party telemarketing vendor (i.e., documents that are technically in Defendants' control and should have already been produced). (*Id.*) With that progress, however, came continued disputes, as Defendants refused to produce documents related to, *inter alia*, the class and how the class members' phone numbers and consent to be called (if any) were obtained. (*Id.* ¶ 8.) Plaintiffs' counsel nevertheless expressed a desire to resolve these issues without Court-intervention, but explained that at the rate of production, any depositions would fall during the holidays without an extension. (*Id.*) Defendants responded with a letter, stating they would agree to produce additional documents but failing to provide a date when production would be complete. (*See* dkt. 22-3.) They also stated they would only agree to an extension of *oral discovery* until January 31st, with no modification of the written discovery deadline. (Booth Decl. ¶ 9.) On December 7th, Defendants provided minimal supplemental production, which consisted of a list of telephone numbers, dates, and times, and on December 22nd, Defendants provided all of the audio recordings for the phone calls in their control (rather than just a sampling, as the Parties agreed). (*Id.* ¶ 10.) Finally, on December 29th, Defendants produced a

record of its do-not-call list, including removal requests, it has received from individuals who were called. (*Id.*)

Despite their multiple rounds of additional production, Defendants continue to refuse to broaden the scope of that information beyond the named Plaintiffs individually. (*Id.* ¶ 11.) Now, however, it is past the original December 30th discovery deadline—which Defendants refused to move—and they have still failed to produce documents to which Plaintiffs are entitled. Given the soon-to-be closing discovery period, Plaintiffs cannot wait any longer to obtain information related to the heart of their claims and Defendants' defenses.

## ARGUMENT

Plaintiffs are entitled to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Information is discoverable "if [it] appears reasonably calculated to lead to the discovery of admissible evidence." *MSTG, Inc. v. AT&T Mobility LLC*, No. 08-cv-7411, 2011 WL 221771, at *2 (N.D. Ill. Jan. 20, 2011). Courts "consistently adopt[] a liberal interpretation of the discovery rules," *Wilstein v. San Tropai Condo. Master Assoc.*, 189 F.R.D. 371, 375 (N.D. Ill. 1999), and "[t]he burden rests upon the objecting party to show why a [] request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). Defendants have failed to properly respond to the requests *or* establish why they are improper, and a compelling order is thus necessary.

## I.    The Court Should Issue an Order Compelling Defendants' Production.

Although Defendants have produced additional documentation after every meet and confer, their "completed" document production is still far from complete. Pursuant to the Federal Rules, there is a "strong public policy in favor of disclosure of relevant materials," *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002), because the purpose of discovery is

5

"to facilitate trial preparation and settlement of legal disputes." *Last Atlantis Capital, LLC v. AGS Specialist Partners*, Nos. 04-cv-0397, 05-cv-5600, 05-cv-5671, 2013 WL 791422, at *3 (N.D. Ill. Mar. 4, 2013). To be proper, responses must be submitted on time. *See* Fed. R. Civ. P. 33, 34. They must also "allow for meaningful evaluation," and for the requesting party and court "to determine, with certainty, the requests for which [it] is producing documents, the requests for which [it] is withholding documents and on what basis, and the requests for which it has no responsive documents." *See E. & J. Gallo Winery v. Cantine Rallo, S.p.A.*, No. 04-cv-5153, 2006 WL 1652653, at *2 (E.D. Cal. June 13, 2006).

Here, rather than further the purpose of discovery, Defendants have continuously delayed. Defendants initially responded with boilerplate objections and largely refused to produce documents. And now, they have again failed to fully respond. Indeed, a number of requests that go to the heart of Plaintiffs' claims and class certification issues remain unanswered in any meaningful way. In particular, Defendants must provide information related to the proposed class, their financial condition, the relationship between Defendant Jordan and Defendant MJM, and their defense of prior express consent to place the calls.

Plaintiffs have been exceedingly patient in an attempt to avoid Court-intervention, but Defendants have made clear they won't adequately or timely respond to Plaintiffs' requests. Given the fact that Defendants' promises to date have been empty and their desire to evade discovery apparent, a compelling order is appropriate here. *See Equity Indus. A-Rockville LLC v. 7900 Rockville,* LLC, No. 09-cv-0621, 2010 WL 1737915, at *2 (S.D. Ind. Apr. 27, 2010) (compelling production within seven days after defendants "fail[ed] to honor their promises…to produce certain—already significantly overdue—[documents].")*; Williams v. Lane*, No. 87-cv-3647, 1991 WL 128636, at *2 (N.D. Ill. July 11, 1991) (finding "defendants have not presented

any viable reasons to justify their continuing dilatory conduct" and ordering them to pay for the "fees incurred in connection with the…motion to compel."); *Wine & Canvas Dev. LLC v. Weisser*, No. 11-cv-01598, 2013 WL 5960900, at *2 (S.D. Ind. Sept. 23, 2013) (compelling party to supplement within five days after "a pattern of broken promises[ and] revolving list of excuses"); *Fudali v. Napolitano*, 283 F.R.D. 400, 403-04 (N.D. Ill. 2012) (compelling production, finding that "[i]t serves no useful purpose to review the various other reasons given…even where the TSA promised to provide discovery, it often did nothing thereafter.").

## II.    The Court Should Overrule Defendants' General and Boilerplate Objections.

### a.    The information sought by Plaintiffs is relevant.

Defendants have objected to nearly every request on the basis that they "seek[] documents that are not relevant to any party's claim or defense and proportional to the needs of the case."[3] In addition to being superficial and improper, the relevance objections are simply wrong. The definition of relevance is broad, and requests are "relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Kodish*, 235 F.R.D. at 450 (citation omitted). Thus, courts "look unfavorably upon significant restrictions placed upon the discovery process" and require an objecting party to establish "why a particular discovery request is improper." *Id.* at 450.

With this broad standard in mind, Plaintiffs' requests seek information necessary to prove their claims—i.e., that Defendants violated the TCPA by placing calls, or having the calls placed on their behalf, to individuals who had not provided prior express consent—and rebut Defendants' defenses—i.e., that they had prior express consent. Indeed, Plaintiffs requested information relating to the phone calls at issue in this case (like who made them, to whom and

---

[3]    *See, e.g.*, Jordan Ans. Molitor Interrog. No. 12; MJM Ans. De La Cabada Interrog. Nos. 2-3, 7-11; Jordan Ans. De La Cabada Interrog. Nos. 8-13; MJM Resp. Molitor Req. Prod. Nos. 16-18, 21, 27, 31, 32.

how they were made, how the recipients' phone numbers were obtained, and policies and procedures related to the calls and the TCPA),[4] similar consumer or governmental complaints regarding the calling practices (to prove the conduct was willful),[5] and certain defenses that have been raised by Defendants (like how any consent to call was obtained).[6] This information is more than just tangentially relevant to Plaintiffs' claims—it goes to the crux of whether Defendants are liable for the conduct. *See, e.g.*, *Whiteamire Clinic*, 2013 WL 5348377, at *3 (ordering production of documents in similar TCPA case); *Martin v. Bureau of Coll. Recovery*, No. 10-cv-7725, 2011 WL 2311869, at *4 (N.D. Ill. June 13, 2011) (ordering production related to TCPA consent defense as "not only relevant to the merits of [the] affirmative defense, but [also to] demonstrate that each class member is like Plaintiff as to this defense.").

Defendants have also refused to produce any information related to their financial condition on the basis that it is irrelevant. (Booth Decl. ¶ 12.) Setting aside the fact that they made their financial condition relevant by claiming neither cannot support a class-wide judgment, information related to Defendants' financial condition clearly relates to superiority. (*See* MJM Molitor Req. Prod. Nos. 38-43; Jordan Molitor Req. Prod. Nos. 25-32); *see Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478-79 (N.D. Ind. 2009) (requiring production related to revenue from sale of product); *Green v. Monarch Recovery Mgmt., Inc.*, 997 F. Supp. 2d 932, 934-35 (S.D. Ind. 2014) (requiring production related to net worth because it is "relevant in evaluating class superiority" and "helpful in deciding class certification.").

In light of this broad standard, Defendants' boilerplate relevance objections fail.

---

[4]     *See, e.g.*, MJM Resp. Molitor Req. Prod. Nos. 31, 32, 36, 37; MJM Ans. De La Cabada Interrog. Nos. 2, 3, 7.

[5]     *See, e.g.*, MJM Resp. Molitor Req. Prod. No. 27; Jordan Resp. Molitor Req. Prod. No. 24.

[6]     *See, e.g.*, MJM Resp. Molitor Req. Prod. Nos. 17-20.

**b.** **Defendants' objections that the requests are overly broad and unduly burdensome are deficient.**

Defendants' boilerplate objections that requests are overly broad and unduly burdensome are also improper.[7] When a party fails to "cite a basis for [] boilerplate objection[s]" it "violat[es] [] the Federal Rules…which require parties to specifically state the grounds and legal basis for objecting to discovery requests." *Swift v. First USA Bank*, No. 98-cv-8239, 1999 WL 1212561, at *7 (N.D. Ill. Dec. 15, 1999).

Here, while Defendants have objected to nearly every request as being overly broad or unduly burdensome, they have failed to explain how the requests are too broad, how they should be narrowed, or what the burden is—even after multiple meet and confers. In fact, Defendants have made clear that their objections are nothing more than placeholders: while they originally refused to produce any recordings of the messages for the calls based on burden and relevance, they later agreed to produce a sample to minimize the burden. (Booth Decl. ¶ 10.) It also appears that when they finally came to produce the recordings, they realized that the burden wasn't so great after all and actually produced *all* recordings in their control. (*Id.*) Thus, these types of "baseless, often abused litany" objections are "tantamount to not making any objection at all," *Fudali*, 283 F.R.D. at 403 (quotations and citations omitted), and Defendants should be ordered to respond to each of the interrogatories and document requests objected to on those bases.

---

[7]     *See* MJM Ans. Molitor Interrog. Nos. 1-12; Jordan Ans. Molitor Interrog. Nos. 1-5, 7-12; MJM Ans. De La Cabada Interrog. No. 1-11; Jordan Ans. De La Cabada Interrog. Nos. 1-4, 7-13; MJM Resp. Req. Prod. Nos. 4, 6-18, 20, 23-29, 31-34, 36-44; Jordan Resp. Molitor Req. Prod. Nos. 6-12, 14-18, 21, 22, 24-32.

9

### c. Defendants' objections to the definitions of certain terms likewise fail.

Defendants also make vague objections to certain definitions of terms (e.g., "You" or "Phone Calls").[8] But these terms, as defined, are indisputably tailored with the clear goal of eliciting discoverable information as it relates to Plaintiffs' TCPA claim and Defendants' affirmative defenses. As an initial matter, to the extent Defendants "encounter[ed] any ambiguity in construing either the Request or any instruction relevant to the Request, [they were instructed to] nonetheless respond to the Request, set forth the matter deemed ambiguous, and set forth the instruction used in responding to the Request." (*See, e.g.*, Molitor's First Req. Prod. to MJM at Instructions ¶ 1.)

Defendants did not follow that instruction, often relying on their objections alone and failing to respond to the discovery requests outright. But they cannot rely on these baseless objections as a means of evading a response altogether, *see Miller v. Wal-Mart*, No. 13-cv-46, 2014 WL 4545710, at *1 (W.D.N.C. Sept. 12, 2014) (finding that party's objection to certain definitions, including "you" or "your" "on the grounds that [they were] vague, overbroad, [and] unduly burdensome" had "no basis in law or fact"), especially since their instructions likewise directed Plaintiffs to explain how a request was ambiguous and identify the construction they used to answer. Accordingly, Defendants must supplement their responses, including by explaining any definition or meaning used and actually producing documents.

---

[8] *See* MJM Ans. Molitor Interrog. Nos. 2-12; Jordan Ans. Molitor Interrog. Nos. 2-5, 7-10; MJM Ans. De La Cabada Interrog. Nos. 3, 4, 6, 9-11; Jordan Ans. De La Cabada Interrog. Nos. 3-5, 7, 11; MJM Resp. Molitor Req. Prod. Nos. 3, 4, 6-20, 23-34, 38-44; Jordan Resp. Molitor Req. Prod. Nos. 4, 6-8, 14-17, 24, 27.

### d. Defendants' confidentiality objections are improper.

Defendants also objected to a number of requests because they "seek[] confidential business information" or "confidential and private information." These objections fail. A party objecting to requests based on their confidential and proprietary nature *must* provide "sufficient evidence to support" its concerns. *See Iosello v. Lawrence*, No. 03-cv-0987, 2004 WL 442609, at *2 (N.D. Ill. Mar. 5, 2004) *aff'd* No. 03-cv-0987, 2004 WL 1194741 (N.D. Ill. May 26, 2004). And where, as here, the parties have entered into an appropriate protective order, there is no basis for withholding documents based on confidentiality. (*See* dkt. 19); *see also Fine Line Distrib., Inc. v. Rymer Meats, Inc.*, No. 09-cv-5685, 1994 WL 376283, at *2 (N.D. Ill. July 15, 1994) (compelling documents despite confidentiality objection because of protective order); *In re Mercury Fin. Co. of Ill.*, No. 97-cv-3035, 1999 WL 495903, at *6 (N.D. Ill. July 12, 1999) (rejecting argument that confidential documents should not be produced given protective order).

Defendants also make the repeated objection that providing substantive responses and information would "invade the privacy rights of third parties."[9] These objections are equally insufficient, as they fail to adequately explain what rights would be violated and to what extent. *See Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, No. 13-cv-1054, 2014 WL 1612838, at *4 (C.D. Ill. Apr. 22, 2014) ("[P]rivacy interests [] may be preserved by the redaction of [] names in any documents that the [defendant] produces and by [] protective order."); *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 161 F.R.D. 355, 358 (N.D. Ill. 1995) ("When the probative value of the information is significant, and the privacy interests in the material can be protected by redaction, there is a presumption in favor of discovery.").

---

[9]    *See* Jordan Ans. Molitor Interrog. No. 12; MJM Ans. De La Cabada Interrog. Nos. 3, 7-11; Jordan Ans. De La Cabada Interrog. Nos. 7, 8; MJM Resp. Req. Prod. Nos. 25, 27-29, 31-33, 36, 37, 41-43; Jordan Resp. Molitor Req. Prod. Nos. 23, 24.

Here, Defendants failed to explain why the information requested is confidential, let alone how its disclosure will harm them or any third parties. But even if they had, the protective order in this case obviates any concern. These objections cannot stand as a basis for Defendants to withhold discoverable information and a compelling order is appropriate.

> **e.      Defendants' privilege and work-product objections are likewise deficient.**

Defendants also asserted privilege and work-product objections to requests without supplying the requisite support. (*See* MJM Resp. Molitor Req. Prod. Nos. 27, 35; Jordan Resp. Molitor Req. Prod. Nos. 21-24.) A party claiming privilege must "describe the nature of the documents, communications, or things not produced…in a manner that, without revealing information itself privileged…will enable [the] other part[y] to assess the applicability of the privilege." *Ritacca v. Abbott Labs.,* 203 F.R.D. 332, 335 (N.D. Ill. 2010) (citing Fed. R. Civ. P. 26(b)(5)). To provide the requisite specificity, they must produce a log that "identif[ies] 'for *each* separate document…the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged.'" *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013). When a party fails to provide a log, its objections may be waived. *See Lawrence E. Jaffe Pension Plan v. Household Intern., Inc.*, 244 F.R.D. 412, 425-26 (N.D. Ill. 2006).

Here, while Defendants have asserted privilege and/or work-product objections, they have not identified *what* information is privileged or *why*, much less provided any sort of log. Absent this information, neither Plaintiffs nor the Court can determine whether any privilege applies, and Defendants' objections fail. *Muro v. Target Corp.*, No. 04-cv-6267, 2006 WL 3422181, at *2 (N.D. Ill. Nov. 28, 2006).

12

### f. Defendants' general objections are improper.

Defendants also improperly incorporate "general objections" into their responses to every interrogatory and document request. Such blanket objections fail to meet the specificity requirements of Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(C) and are improper. *See Novelty, Inc. v. Mtn. View Mktg., Inc.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) (general objections "made without elaboration . . . are not 'objections' at all and will not be considered."). For that reason, they are without legal meaning and should be treated as waived. *See, e.g.*, *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 260, 264 (N.D. Ill. 1979) ("General objections may result in waiver of the objections."); *Novelty*, 265 F.R.D. at 375 (citation omitted).

## III. Defendants' Objections on the Prematurity of Class-wide Discovery are Improper.

Finally and particularly troubling, Defendants have objected on the basis that certain requests seek class-wide discovery, stating they "will respond to the Request[s] with respect to phone calls allegedly received by Plaintiffs only" and objecting to "Plaintiff's definition of 'Call Recipients'…[as] overbroad and…not relevant to any party's claim." (*See* Jordan Ans. Molitor Interrog. No. 12; MJM Ans. De La Cabada Interrog. Nos. 3, 7; MJM Resp. Molitor Req. Prod. Nos. 16-18, 20; Jordan Resp. Molitor Req. Prod. No. 10.) Defendants' position in this regard is that unless and until a class is certified in this case, they have no obligation to respond to any requests related to class certification issues. That is obviously improper. "Absent an order from the District Judge which bifurcates (or approves bifurcation) discovery into phases…[a] defendant must respond fully and completely to all discovery requests." *In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Trans. Act (FACTS) Litig.*, No. 08-ml-1980, 2010 WL 4942645, at *5 (C.D. Cal. 2010). The Court did not bifurcate discovery here, and Defendants have not requested it. But even if it had been bifurcated, the information requested is necessary

13

to prepare a class certification motion. *See, e.g.*, *De Falco v. Vibram USA, Inc.*, No. 12-cv-7238, 2013 WL 1122825, at *9 (N.D. Ill. Mar. 18, 2013) (finding certification "issues were better raised after the parties have had an opportunity to conduct class discovery"). Indeed, the Seventh Circuit has even explained that "a court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class." *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011). Defendants' refusal to provide any class-related discovery thus runs contrary to binding case law and, frankly, common sense. *See, e.g.*, *Whiteamire Clinic*, 2013 WL 5348377, at *3 (compelling documents regarding individuals other than plaintiff as "clearly relevant to class discovery; specifically, to the issues of numerosity, commonality, and typicality" absent an order bifurcating merits and class discovery). They should thus be ordered to produce documents related to the putative class.

## IV.    The Court Should Award Plaintiffs' Attorneys' Fees and Costs.

Finally, given Defendants' baseless conduct in refusing to provide the obviously relevant information, coupled with their continued attempts to evade discovery obligations, Plaintiffs should be awarded the reasonable attorneys' fees and costs incurred in attempting to obtain the information and bringing a motion to compel. *See* Fed. R. Civ. P. 37(a)(5)(A) (if a court grants a motion to compel it "must . . . require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees."); *Fudali,* 283 F.R.D. at 404 ("Where any party acts inappropriately and causes his opponent to incur needless costs to secure compliance with discovery obligations, Rule 37 provides a remedy and should not receive a grudging application."). Rule 37 excuses a party for failing to comply with its discovery obligations for three reasons: (i) the moving party did not make a good faith attempt to obtain discovery prior to seeking court action, (ii) the party was

justified in failing to abide, or (iii) an award of expenses would be unjust given the circumstances. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii). None of those excuses applies here.

First, Plaintiffs spent more than a month attempting to engage in discussions with Defendants to avoid seeking the Court's intervention—including requesting a continuance of all case deadlines (which they opposed). Plaintiffs engaged Defendants in two meet and confers, and then gave Defendants several weeks to complete their already outstanding production.

Next, Defendants were not justified in failing to produce the requested information. They had nearly three and a half months to respond.

And finally, a fee award would not be unjust, because Defendants' "failure to produce documents in a timely manner was no one's fault but [their] own." *Lorillard Tobacco Co v. Elston Self Serv. Wholesale Grocs., Inc.*, 259 F.R.D. 323, 327 (N.D. Ill. 2009). No matter the reason, "the record evidences strong scents of noncompliance and evasive conduct," and "is exactly the type of behavior contemplated by Rule 37's fee-shifting provision." *Id.* at 328.[10]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (1) compelling Defendants to produce all relevant information responsive to the outstanding interrogatories and requests for production, (2) deeming any objections that Defendants may have to Plaintiffs' written discovery requests overruled and waived, (3) awarding Plaintiffs attorneys' fees and costs associated with bringing the instant motion, and (4) providing such other and further relief that the Court deems reasonable and just.

---

[10] Plaintiffs will provide the Court a complete accounting of the time and expenses incurred obtaining Defendants' compliance upon resolution of the instant motion (or sooner, should the Court request it). (*See* Booth Decl. ¶ 12.)

Respectfully submitted,

**JEFFREY MOLITOR, LAURA C. DE LA CABADA MORO, STEVE CLARKE, AND RUTH MAKI**, individually and on behalf of all others similarly situated,

Dated: January 9, 2017

By:  /s/ Courtney C. Booth
     One of Plaintiffs' Attorneys

Benjamin H. Richman
brichman@edelson.com
Courtney C. Booth
cbooth@edelson.com
Sydney M. Janzen
sjanzen@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Joseph I. Marchese (Admitted *Pro Hac Vice*)
jmarchese@bursor.com
Philip L. Fraietta (Admitted *Pro Hac Vice*)
pfraietta@bursor.com
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163

*Counsel for Plaintiffs and the Proposed Class*

16

## <u>CERTIFICATE OF SERVICE</u>

I, Courtney C. Booth, an attorney, hereby certify that on January 9, 2017, I caused to be served the above and foregoing ***Plaintiffs' Memorandum in Support of Motion to Compel Defendants' Responses to Outstanding Written Discovery Requests*** by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the court's CM/ECF electronic filing system.

<div align="center" style="margin-left:40%">

/s/ Courtney C. Booth
Courtney C. Booth

</div>