**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JEFFREY MOLITOR, LAURA C. DE LA CABADA, STEVE CLARKE, and RUTH MAKI, individually and on behalf of all others similarly situated, | Case No. 1:16-cv-02106 |
| | Honorable Charles R. Norgle, Sr. |
| *Plaintiffs*, | Magistrate Judge Sidney I. Schenkier |
| v. | |
| MANASSEH JORDAN MINISTRIES, INC., a New York Religious Corporation, and YAKIM MANASSEH JORDAN, an individual, | |
| *Defendants*. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO**
**AMEND AND FILE SECOND AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ...................................................................................................2

       A.     Procedural History....................................................................................2

       B.     Manasseh Jordan Ministries, Manasseh Jordan, and Robert Seibel ..............3

       C.     Kingdom Ministries and Robert Seibel ......................................................4

              1.     Kingdom Operates as Nothing More than a Vehicle to Assist in
                     Defendants' Enrichment of Themselves ............................................4

              2.     Kingdom's and Robert Seibel's Connections to MJM and Jordan..........7

              3.     Kingdom Ministries' Rule 30(b)(6) Deposition .........................................10

III.   ARGUMENT .......................................................................................................11

       A.     This Motion Was Filed Without Undue Delay and Is Not Brought in Bad
              Faith ........................................................................................................11

       B.     The Proposed Amendment Causes Defendants No Undue Prejudice.............13

       C.     Plaintiffs' Amendment is Not Futile.................................................................14

IV.    CONCLUSION ...................................................................................................18

# **TABLE OF AUTHORITIES**

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*,
    419 F.3d 594 (7th Cir. 2005) ........................................................15

*Cont'l Bank, N.A. v. Meyer*,
    10 F.3d 1293 (7th Cir. 1993) ........................................................13

*Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.*,
    383 F.3d 552 (7th Cir. 2004) ........................................................14

*Dubicz v. Commonwealth Edison Co.*,
    377 F.3d 787 (7th Cir. 2004) ........................................................12

*Johnson v. Cypress Hill*,
    641 F.3d 867 (7th Cir. 2011) ................................................... 11-12

*Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*,
    800 F.3d 343 (7th Cir. 2015) ........................................................11

*Lumpkin v. Environdyne Indus., Inc.*,
    933 F.2d 449 (7th Cir. 1991) ........................................................18

*Perrian v. O'Grady*,
    958 F.2d 192 (7th Cir. 1992) ........................................................14

**UNITED STATES DISTRICT COURT CASES:**

*Boudreau v. Gentile*,
    646 F. Supp. 2d 1016 (N.D. Ill. 2009) ....................................15, 16

*Commercial Life Ins. Co. v. Lone Star Life Ins. Co.*,
    No. 88-cv-5004, 1989 WL 64715 (N.D. Ill. June 7, 1989)...............13

*Dimmitt & Owens Fin., Inc. v. Superior Sports Prod., Inc.*,
    196 F. Supp. 2d 731 (N.D. Ill. 2002) ......................................15, 16

*Hoenig v. Karl Knauz Motors, Inc.*,
    983 F. Supp. 2d 952 (N.D. Ill. 2013) ...........................................11

*Hollinger Int'l, Inc. v. Hollinger Inc.*,
    No. 04-cv-698, 2007 WL 1029089 (N.D. Ill. Mar. 29, 2007) ..........13

*Huon v. Johnson & Bell, Ltd.*,
    No. 09-cv-7877, 2012 WL 1932120 (N.D. Ill. May 23, 2012)..........................................11

*Johnke v. Espinal-Quiroz*,
    No. 14-cv-6992, 2017 WL 3620745 (N.D. Ill. Aug. 23, 2017) .........................................15

*Lyons v. Cook Cnty.*,
    No. 14-cv-6361, 2015 WL 6673901 (N.D. Ill. Oct. 30, 2015) .........................................11

*Pietrzycki v. Heights Tower Serv., Inc.*,
    No. 14-cv-6546, 2015 WL 2265466 (N.D. Ill. May 11, 2015)..................................12, 13

*Serfecz v. Jewel Food Stores, Inc.*,
    No. 92-cv-4171, 1997 WL 543116 (N.D. Ill. Sept. 2, 1997)............................................13

*Wachovia Sec., LLC v. Neuhauser*,
    528 F. Supp. 2d 834 (N.D. Ill. 2007) ..............................................................................15

*Wilson v. Wilson*,
    No. 89-cv-9620, 1991 WL 247711 (N.D. Ill. Nov. 12, 1991) .........................................13

**MISCELLANEOUS:**

47 U.S.C. § 227 ....................................................................................................................2

Fed. R. Civ. P. 15 ...............................................................................................................11

Simon Medcalfe & Cecil Sharp, *A Financial Analysis of Church Growth* (2012),
    *available at* http://www.thearda.com/asrec/archive/papers/Medcalfe%20&%20
    Sharp%20-%20A%20Financial%20Analysis%20of%20Church%20Growth%20.pdf.......7

## I.    INTRODUCTION

Plaintiffs, Jeffrey Molitor, Laura C. De la Cabada, Steve Clarke, and Ruth Maki ("Plaintiffs"), through their undersigned counsel, respectfully move this Court for leave to amend and file their Second Amended Class Action Complaint, to add Mr. Robert Seibel and Kingdom Ministries Church, Inc. ("Kingdom Ministries" or "Kingdom") as party-defendants.[1]

Plaintiffs seek leave to amend based upon evidence adduced in discovery regarding the roles of the proposed party-defendants in the alleged TCPA violations at issue here. That evidence confirms, among other things, that:

- The proposed party-defendant Kingdom Ministries is a mere alter ego of Defendant Yakim Manasseh Jordan ("Jordan") and proposed party-defendant Mr. Seibel;

- Defendant Manasseh Jordan Ministries, Inc. ("MJM") is also an alter ego of proposed party-defendant Mr. Seibel;

- Mr. Seibel maintains control over the current Defendants, including in the form of decision-making powers with respect to MJM's business affairs and formal power of attorney over Defendant Jordan;

- The Defendants and proposed party-defendants fail to observe even the most basic corporate formalities—e.g., the corporate representative for Kingdom Ministries' testimony indicated that (i) Kingdom does not currently have a corporate treasurer, (ii) Kingdom did not provide notice to all of its members of at least one special meeting (at which Kingdom made the important corporate decision of selling corporate property), (iii) Kingdom has not followed its own bylaws in maintaining a proper number of directors, (iv) Kingdom has not kept sufficient minutes to identify when certain directors were elected and when certain directors were removed, and (v) Kingdom's corporate assets have been manipulated for personal gain, including personal use by Defendant Jordan and proposed party-defendant Seibel;

- MJM, Mr. Jordan and Mr. Seibel utilize Kingdom Ministries as a pass through of assets obtained, in part, as a result of the TCPA violations alleged in this action— e.g., donations secured as a result of their unlawful telemarketing activities; and

---

[1]    Attached hereto as Exhibit 1 is Plaintiffs' Proposed Second Amended Complaint ("SAC"). Plaintiffs have also included a redlined copy of the SAC highlighting changes from the First Amended Complaint for ease of reference, attached hereto as Exhibit 2.

- Defendants and the proposed party-defendants have sheltered within (or passed through) Kingdom Ministries literally millions of dollars in cash, real estate and other property.

With that in mind and as explained further below, Plaintiffs easily meet the liberal standard for amendments to pleadings. The instant motion is not unduly delayed, as—through no fault of Plaintiffs—the deposition of Kingdom Ministries was not completed until October 31, 2017. Plaintiffs do not make this motion in bad faith, nor would amendment be futile or Defendants unfairly prejudiced. Indeed, Plaintiffs only request very limited additional discovery of Mr. Seibel (whom they have been unable to subpoena previously due to his status as counsel of record for Defendants) and intend to move for class certification immediately after that. Therefore, the Court can appropriately grant Plaintiffs leave to amend in order to name Mr. Seibel and Kingdom Ministries as party-defendants.

## II.     BACKGROUND

### A.     Procedural History

Plaintiff Molitor filed this action in state court on January 5, 2016, alleging that Defendants made illegal phone calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Defendants removed the case to federal court shortly thereafter (*see* dkt. 2), and Plaintiffs ultimately filed their First Amended Complaint ("FAC") on June 20, 2016. (Dkt. 11-1.) The case then progressed into discovery.

Discovery was protracted as a result of various disputes (and resulting motion practice) related to Plaintiffs' requests for production from Defendants and several of their sister companies. That included motions filed by third-party Kingdom Ministries to quash Plaintiffs' subpoenas for documents and a deposition. (*See* dkts. 51, 55.) Those disputes were ultimately

2

resolved and fact discovery is now closed.[2] Based on information uncovered during the course of discovery, including certain third-party discovery, Plaintiffs have identified an additional entity (Kingdom Ministries) and individual (Robert Seibel), who the evidence shows were involved in and liable for the alleged violations of the TCPA at issue in this case. Specifically, Plaintiffs have uncovered evidence that demonstrates that Kingdom Ministries is operating as an alter-ego of Defendants Manasseh Jordan Ministries, Inc. ("MJM") and Yakim Manasseh Jordan ("Jordan" and collectively with MJM, "Defendants"), and that Mr. Seibel oversees and, in large part, controls the entire operation. Plaintiffs now seek leave to amend their operative pleading to add Kingdom Ministries and Mr. Seibel as additional party-defendants.

### B. Manasseh Jordan Ministries, Manasseh Jordan, and Robert Seibel.

Discovery has revealed a concerning depth to the relationship between Mr. Seibel—who, notably, has an appearance on file representing the Defendants as a sort of "outside general counsel" in this case—and Defendants. (*See* dkts. 41, 60.) Most strikingly, Jordan stated in his deposition that Seibel has power of attorney over him. (Jordan Dep. Excerpts, attached hereto as Exhibit 3, 125:5–14.) Furthermore, Jordan's father and Zoe Ministries Minister, E. Bernard Jordan, acknowledged in an affidavit that Seibel has been with MJM "since at or about the time" of its inception, that Defendant Jordan "relied upon the guidance" of Seibel for "business

---

[2]     Completion of discovery on Kingdom Ministries was repeatedly delayed by circumstances beyond Plaintiffs' control, including that Kingdom cycled through no less than three sets of counsel (of which Plaintiffs are aware) who ultimately withdrew from representation. This not only delayed Kingdom's document production, but also complicated Plaintiffs' ability to depose Kingdom. Indeed, after numerous extensions of the deposition date requested by Kingdom, Plaintiffs' counsel was only able to complete a few minutes of the deposition of Kingdom Ministries' original 30(b)(6) representative, Shalanda Lakeshia Few, on September 27, 2017. (*See* Declaration of Sydney M. Janzen ("Janzen Decl.") ¶ 6, attached hereto as Exhibit 4.) The deposition abruptly ended so that Ms. Few could deal with a personal medical emergency, and was not able to be rescheduled—with a different 30(b)(6) representative—until over a month later (in part because Kingdom—once again—parted ways with its then-attorney. *Id.* at ¶¶ 7-9. Ultimately, Kingdom Ministries' Rule 30(b)(6) representative was not represented by counsel at her deposition. Plaintiffs reserve their right to seek costs associated with having to make a second trip to Atlanta to complete Kingdom's deposition.

affairs," and that Seibel (along with another associate of Defendant Jordan's) "are in control of the business affairs of Manasseh Ministries." (Bernard Jordan Aff. ¶¶ 3–7, attached hereto as Exhibit 5.) Indeed, Jordan himself admitted Seibel "handle[s] some of the affairs of the ministry." (Ex. 3, Jordan Dep. 49:20–50:5.)

Similarly, Jordan acknowledged the overlapping relationships between the current Defendants and proposed party-defendant Kingdom Ministries. For example, he testified that Kingdom Ministries' CEO, David Few, was previously a paid employee of MJM, and indeed, Few's LinkedIn profile stated that he had worked in "Experiential Marketing/Event Planning" for "MJM" since 2014. (*Id.* 108:18–109:6; Kingdom Social Media Screen Captures, attached hereto as Exhibit 6, at 1). And, as explained further below, the entities regularly share and exchange millions of dollars' worth of assets.

### C. Kingdom Ministries and Robert Seibel.

For its part, Kingdom Ministries is a registered 501(c)(3) non-profit entity that was incorporated in the state of Georgia in December 2015. (*See* Kingdom 501(c)(3) Application, at KINGDOM_00005, attached hereto as Exhibit 7.) It purports to be led by Pastor David Few, Jr., who also serves as Kingdom's President and a director on its board, alongside (until recently) Kingdom Ministries' Secretary-Treasurer, Robert Seibel. (*Id.*; *see also* Kingdom Board Meeting Records, KINGDOM_00060, 00066, attached hereto as Exhibit 8; Deposition of Crystal Besley at 21:4–22, attached hereto as Exhibit 9.) In reality, and as explained below, Kingdom is simply a shell entity Defendants Jordan and MJM—and Robert Seibel, through his power over them— have used to help enrich themselves and hide assets.

>   *1.    Kingdom Operates as Nothing More than a Vehicle to Assist in Defendants' Enrichment of Themselves.*

Kingdom Ministries' office address is listed as 194 Jonesboro Road in Jonesboro,

Georgia, which appears to be a strip mall. (*See* Kingdom Georgia Business Formation Filing, attached hereto as Exhibit 10; *see also* Google Maps Street View of 194 Jonesboro Road, attached hereto as Exhibit 11.) Plaintiffs were unable to effect service of subpoenas on Kingdom Ministries at the 194 Jonesboro Road address, despite it being listed as the location of its registered agent. (*See* Affidavit of Non-Service, attached hereto as Exhibit 12.) Indeed, although Kingdom's Rule 30(b)(6) designee testified that Kingdom supposedly holds "empowerment service[s] . . . every other Saturday" at 194 Jonesboro Road (*see* Ex. 9, Besley Dep. 35:23–36:4), the process server who filed the affidavit of non-service stated that he "[s]poke with many people in the building, [and] Kingdom Ministries is unknown." (*See* Ex. 12, Affidavit of Non-Service.)

Kingdom Ministries' website is similarly suspect. It contains photographs of churches with no known affiliation to Kingdom, as well as false articles about Kingdom's so-called activities, such as the groundbreaking for a church in Colombia.[3] (*See* Ex. 9, Besley Dep. 121:12–123:10; Kingdom Website Screen Captures and Related Photos, attached hereto as Exhibit 13, at 1-2.) The website currently contains no contact information and no address for Kingdom's supposed office(s) or church(es). (Ex. 13 at 3.) It claims to provide links to Kingdom's social media pages, but those links are either inoperative or direct to the accounts of other persons or businesses, including a Twitter account that has not been used since 2012. (*See* Ex. 6, Kingdom Social Media Screen Captures.) Kingdom's 30(b)(6) representative testified that she was unaware whether the entity even uses any social media at all. (Ex. 9, Besley Dep. 79:12–14.) The only part of Kingdom's website that appears to be fully fleshed out is its donation page, which contains language identical to MJM's donation page and which, at one point in time,

---

[3]     The webpage has been changed since Plaintiffs' counsel brought it up at Kingdom's deposition. It now depicts an article published on the same date, with the same photograph, but discusses groundbreakings in Africa and Haiti.

actually contained references to MJM and Defendant Jordan. (*See* Ex. 13, Kingdom Website Screen Captures and Related Photos, at 4-6.) Not surprisingly, it has since been updated.

For most of the past year, the online portal for Kingdom Ministries contained no contact information, no real events, and hardly any information about what Kingdom does and who is involved with Kingdom. (Ex. 13, Kingdom Website Screen Captures and Related Photos, at 3, 7-12.) Recent changes—updated around the time that Plaintiffs began inquiring about Kingdom Ministries—have added a description of the Church's history, and retroactively added several events from this past summer. However, these additions include no description of the events themselves, no location information for the events, and no contact information for those interested in participating. (*Id.* at 9-10.) Kingdom's 30(b)(6) representative—whose self-described organizational duties include event planning for Kingdom—could not confirm whether the vast majority of these events ever took place. (Ex. 9, Besley Dep. 13:2–8, 96:1–97:17.)[4]

Despite its lack of a significant membership base,[5] disputable use of a regular place of worship, and questionable history of events, Kingdom still somehow managed to accumulate

---

[4]     In her deposition, Kingdom Ministries' 30(b)(6) representative, Crystal Besley, stated that Kingdom held three "community events" in 2016 and three in 2017. (Ex. 9 at 93:15–16.) For the 2016 events, Besley did not know when the events took place, but stated that all of the events happened through the Adamsville, Georgia recreation center. (*Id.* at 94:15–95:5.) For the 2017 events (which were just recently added to Kingdom's website), Besley could not remember most details about them until presented with a screenshot of Kingdom's web page, and stated that at least one took place at the Adamsville recreation center. (*Id.* at 113:1–2.)

        Following her deposition, Plaintiffs' counsel contacted the Adamsville Recreation Center and spoke with an operator. (Ex. 4, Janzen Decl. ¶¶ 10-11.) The operator represented that the Center had no records of Kingdom Ministries hosting an event there at any point in the past three years, had no records of events booked by anyone named Crystal Besley, and that a different organization had rented out the entire building on the day Besley represented Kingdom's 2017 "back-to-school" event took place. (Ex. 9 at 112:21–113:2; Ex. 4, Janzen Decl. ¶ 11.)

[5]     Kingdom's corporate representative did not know the exact number of members that Kingdom could claim as part of its supposed congregation, but stated that "[i]t's really small." (Ex. 9, Besley Dep. 40:15.) Kingdom's own 501(c)(3) application listed its membership count at 10 members. (*See*  Ex. 7, 501(c)(3) Application, at KINGDOM_00017.)

6

over $3 million in revenue and over $1 million in expenses from January 2016 through July 2017
(including nearly $75,000 on "Ministry Expenses," over $90,000 on "Advertising and
Promotion," over $330,000 on "Live Op[erations], Support, & [a] Prayer Hotline," and nearly
$220,000 on "Overseas Missionary Support"). (*See* Kingdom Profit & Loss Statements,
KINGDOM_00076–77, attached hereto as Exhibit 14.) Not even Kingdom's own secretary,
director, and Rule 30(b)(6) representative knows where the vast majority of this money comes
from or goes. (*See* Ex. 9, Besley Dep. 87:4–118:25.) [6]

> 2. *Kingdom's and Robert Seibel's Connections to MJM and Jordan.*

Several facts uncovered during discovery highlight the operational overlap among
Kingdom, Mr. Seibel, and the currently named-Defendants. First, as noted above, in addition to
being heavily involved with Kingdom Ministries until very recently as its CFO, Secretary, and
Treasurer, Mr. Seibel also has an appearance on file representing the Defendants in this case.
(*See* dkts. 41, 60.) But the interconnections between Seibel, Kingdom, and Defendants don't stop
there—they include references to MJM and Jordan on Kingdom's website, the purchase and sale
of real estate by Kingdom and Seibel that was used by Jordan, and extensive business and
personal relationships among individuals associated with each ministry.

A prior version of Kingdom Ministries' "History of the Church" webpage shows that on
August 6, 2016, the page contained the following text:

> David Few is a Christian minister currently based in Boston. He has been involved
> in Christian Ministry all his life [sic] As a Christian he believes and testifies that
> Jesus Christ is the Son of God and there is no other way to salvation than through
> Him. His ministry and his life are based on this belief. **Prophet Manasseh appears
> weekly on BET's Morning inspiration.**

---

[6]     *See also* Simon Medcalfe & Cecil Sharp, *A Financial Analysis of Church Growth*, Table 1
(2012), *available at* http://www.thearda.com/asrec/archive/papers/Medcalfe%20&%20Sharp%20-
%20A%20Financial%20Analysis%20of%20Church%20Growth%20.pdf (last visited Nov. 30, 2017)
(finding average annual church revenues of $293,884 among a sample of 800 Georgia churches).

(Ex. 13, Kingdom Website Screen Captures and Related Photos, at 13.) (emphasis added). The remainder of the page focuses on the life, accomplishments, and ministry of Defendant Jordan. (*Id.* at 13-14.) References to Defendant Jordan and/or MJM have occurred on other parts of the website as well. An August 2016 screen capture of the website shows it directing donations to "David Few **Jordan Ministries**." (*Id.*, at 15.) Past versions of the website also contained a phone number and P.O. Box address for donations that match the phone number and address for donations to MJM. (*Id.*; Ex. 3, Jordan Dep. 111:15–113:16.)[7] And the URL "prophetmanasseh.tv," owned by Defendant Yakim Manasseh Jordan, directed to the Kingdom Ministries' website, until after Plaintiffs raised that fact on a prior motion.

Kingdom's and Seibel's real estate activities also intersect with MJM and Defendant Jordan. In June 2016, Kingdom Ministries purchased a six-bedroom mansion in a subdivision adjacent to an exclusive golf club, located at 12220 NW 68th Ct. in Parkland, Florida. (*See* 12220 NW 68th Ct. Property Records, attached hereto as Exhibit 15, at 1.) Kingdom Ministries purchased the home for $2.65 million. (*Id.*) ████████████████████████████ ███████████████████████████████. (*See* Yakim Jordan Tax Returns, attached hereto as Exhibit 16, at 1.) Jordan has also listed this home as his address on a filing with Florida's Secured Transaction Registry, which listed a $30,000 grand piano as collateral. (*See* Exhibit 17.) Jordan acknowledges spending time at this address, and Kingdom's corporate representative acknowledges seeing him there in the past. (Ex. 3, Jordan Dep. 91:16–19, 96:10–13; Ex. 9, Besley Dep. 127:8–13.) However, on May 15, 2017 (just one week after Kingdom Ministries became aware of Plaintiffs' subpoenas for documents and a deposition), Kingdom directors David Few and Robert Seibel approved the sale of the property to a company, RAS

---

[7] Kingdom's 30(b)(6) designee had no explanation for why its website contained references to Jordan. (Ex. 9, Besley Dep. 82:6–20).

Realty Management LLC ("RAS Realty"), for just under $1.4 million. (Ex. 15, 12220 NW 68th Ct. Property Records, at 2-5, 11.) RAS Realty is a Florida company that was formed in March 2017 and is *solely managed by Robert Seibel* of Kingdom Ministries. (*Id.* at 6-10..) Seibel's Boca Raton address is listed as RAS Realty's principal and mailing addresses; RAS Realty's registered agent, the firm of Spiegel & Utrera, P.A., also serves as Kingdom Ministries' registered agent in Florida. (*Id.*) Indeed, Seibel represented to Plaintiffs' counsel that he currently owns the property and that Plaintiffs will never reach it as an asset.

The sale of this property also speaks to Kingdom's failure to adhere to corporate formalities. Kingdom's board of directors has, in its two years of existence, met infrequently and its board meeting minutes are devoid of addressing any activities related to Kingdom's stated evangelist mission. (*See generally* Ex. 8 Kingdom Board Meeting Records.) Instead, Kingdom's activities appear to have been limited to approving the Florida property transaction, addressing signatories to Kingdom's bank accounts (to which Seibel was a signatory), and dealing with several other legal documents. (*Id.* at KINGDOM_00024, 00060, 00073.) Kingdom's bylaws explicitly require at least three members on its board of directors at all times; however, records show that the decision to sell 12220 NW 68th Ct. was made by Robert Seibel and David Few alone. (*Id.*; Kingdom Bylaws, KINGDOM_00043, attached hereto as Exhibit 18.)[8] Furthermore, there is no record of Kingdom's original 30(b)(6) deposition representative, Kingdom director and COO Shalanda Lakeshia Few, having *ever* been appointed to Kingdom's board through the procedure set forth in its bylaws. (*See generally* Ex. 8, Kingdom Board Meeting Records.)

---

[8]      Moreover, the records from that June 15, 2017 special board meeting clearly state that Robert Seibel and David Few were the "only" board members of Kingdom—when, in fact, Crystal Besley and Shalanda Lakeshia Few were also board members of Kingdom at that time. (Ex. 15, 12220 NW 68th Ct. Property Records.) Ms. Besley also denies having any knowledge of the meeting or receiving any notice that such a meeting was taking place. (Ex. 9, Besley Dep. 130:5-131:3.)

3.      *Kingdom Ministries' Rule 30(b)(6) Deposition.*

As referenced above, Plaintiffs deposed Kingdom Ministries' second designated 30(b)(6) representative Crystal Besley, who also serves as Kingdom's secretary and a director on its board. Besley's testimony revealed further connections between Kingdom and Jordan.

For example, Besley testified that she had known Jordan for a year and a half—approximately the entire time she has been volunteering and working with Kingdom—and met him at a Kingdom event. (Ex. 9, Besley Dep. 11:19–12:4, 55:8–16.)  She stated that Jordan has attended more than one Kingdom service, and that she "thinks" Jordan participated as a pastor to help lead Kingdom-sponsored programming in the past. (*Id.* at 55:22–56:2.) Finally, she stated that she had previously seen Jordan at the 12220 NW 68th Ct. home formerly owned by Kingdom ███████████████████████████. (*Id.* at 127:8–13; Ex. 16, Yakim Jordan Tax Returns, at 1.)

It's also worth noting that Besley's testimony revealed a stunning lack of knowledge about Kingdom's basic activities, further demonstrating that the ministry is a sham organization that observes no corporate formalities whatsoever. Among many other things, Besley could not articulate what states Kingdom does business in, or whether it conducts business overseas. (Ex. 9, Besley Dep. 17:3–25.) She could not say whether Kingdom engages in mail, telephone, or in-person fundraising, how it accumulated its substantial revenues, or how that money has been spent. (*Id.* at 31:14–33:23, 83:21–84:5, 88:11–93:12, 97:18–25, 99:13–102:22, 103:9–104:1). And she had no idea what board meetings have been held at the company's principal address, when exactly Robert Seibel was removed from Kingdom's board, or whether Kingdom even has a corporate treasurer. (*Id.* at 19:25–20:15, 21:4–22, 83:10–11.)

10

## III.    ARGUMENT

Federal Rule of Civil Procedure 15(a) provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The rule prescribes a liberal standard for amendment and "require[s] a district court to allow amendment unless there is a good reason . . . for denying leave to amend." *Lyons v. Cook Cty.*, No. 14-cv-6361, 2015 WL 6673901, at *2 (N.D. Ill. Oct. 30, 2015) (quoting *Life Plans, Inc., v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 358 (7th Cir. 2015)) (internal quotations omitted). Under this liberal amendment policy, a district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment" can be demonstrated. *Huon v. Johnson & Bell, Ltd.*, No. 09-cv-7877, 2012 WL 1932120, at *3 (N.D. Ill. May 23, 2012) (citing Fed. R. Civ. P. 15(a)).

None of these defects are present here. The proposed amendment is brought in good faith, at an appropriate time in relation to the discovery of this motion's factual basis, and will not cause undue prejudice to any of the current parties to this matter. Accordingly, the Court can appropriately grant Plaintiffs leave to amend their pleadings and file a Second Amended Complaint.

### A.    This Motion Was Filed Without Undue Delay and Is Not Brought in Bad Faith.

There is no delay or improper motive present here. Motions for leave to amend are generally denied on the basis of undue delay when they are filed after *extensive* litigation. *Hoenig v. Karl Knauz Motors, Inc.*, 983 F. Supp. 2d 952, 959–60 (N.D. Ill. 2013). But even then, "delay on its own is usually not reason enough for a court to deny a motion to amend." *Johnson*

11

*v. Cypress Hill*, 641 F.3d 867, 872 (7th Cir. 2011); *see also Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004) ("[D]elay by itself is normally an insufficient reason to deny a motion for leave to amend. Delay must be coupled with some other reason.").

No unreasonable delay or improper motive is present, and Plaintiffs are not seeking amendment due to repeated failure to cure prior deficiencies. Here, Plaintiffs move to amend based on information that became available to them during discovery—a process that has been repeatedly delayed through no fault of Plaintiffs', *see* dkts. 22, 25, 57, 66, 67, 69—which ultimately led them to believe Kingdom Ministries and Robert Seibel were and are operating as alter egos of Defendants, and are involved both in perpetrating the TCPA violations alleged in the complaint as wel as in sheltering assets derived from those violations. *See Pietrzycki v. Heights Tower Serv., Inc.*, No. 14-cv-6546, 2015 WL 2265466, at *1 (N.D. Ill. May 11, 2015) (granting plaintiff's leave to amend based on new information obtained in discovery). Plaintiffs have been diligent in seeking this information, making timely requests for information from the proposed defendants and agreeing in good faith to numerous extensions requested by Kingdom Ministries with respect to its responsive productions to Plaintiffs' subpoenas.

To the extent there can be said to have been any delay, it would fall squarely at the feet of Kingdom and its management. Obtaining third-party discovery required Plaintiffs to litigate motions to quash subpoenas for documents and a deposition, (dkts. 51, 55), and involved a multiple week delay in Kingdom's production of the subpoenaed documents. One day before this Court's deadline for Kingdom to produce a 30(b)(6) deposition representative, Kingdom filed for an extension of time (because their counsel withdrew), which Plaintiffs did not oppose as a professional courtesy. (Dkt. 66; Ex. 4, Janzen Decl. ¶ 4.) At the rescheduled deposition on September 27, 2017, Kingdom's 30(b)(6) representative had to depart after fifteen minutes to

deal with a medical condition. (Ex. 4., Janzen Decl. ¶ 6.) Kingdom delayed in naming a replacement 30(b)(6) representative, and the deposition ultimately did not take place until October 31, 2017. (*Id.* ¶¶ 7-9.) In short, any delay here is not due to Plaintiffs' actions. As such, Plaintiffs' proposed amendments are timely and brought in good faith. Plaintiffs are mindful, however, of the fact that fact discovery has closed in this case, and that the Court has generously allowed third party discovery to resolve despite this. *Cf. Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (need for extensive additional discovery justifies denying motion to amend). As such, Plaintiffs only intend to seek limited discovery of proposed party-defendant Robert Seibel, should the Court grant the instant motion. Plaintiffs were unable to subpoena Mr. Seibel previously, as he is counsel of record for Defendants.

### B. The Proposed Amendment Causes Defendants No Undue Prejudice.

Plaintiffs' proposed amendment also will not unduly prejudice the current Defendants. While "nearly every pleading amendment results in some prejudice" to the non-movant, *Hollinger Int'l, Inc. v. Hollinger Inc.*, No. 04-cv-698, 2007 WL 1029089, at *3 (N.D. Ill. Mar. 29, 2007), "undue prejudice may occur if the opposing party will not have an adequate opportunity to respond to the new allegations." *Wilson v. Wilson*, No. 89-cv-9620, 1991 WL 247711, at *1 (N.D. Ill. Nov. 12, 1991) (internal citations omitted). That a proposed amendment may increase a defendant's exposure to potential liability does not create undue prejudice. *Pietrzycki*, 2015 WL 2265466, at *1; *Serfecz v. Jewel Food Stores, Inc.*, No. 92-cv-4171, 1997 WL 543116, at *6 (N.D. Ill. Sept. 2, 1997) (internal quotation omitted); *see also Commercial Life Ins. Co. v. Lone Star Life Ins. Co.*, No. 88-cv-5004, 1989 WL 64715, at *2 (N.D. Ill. June 7, 1989) (recognizing that "[t]he possibility that a party's exposure to liability might be increased" is "an unavoidable result when amendments are granted").

13

Here, and as noted above, Plaintiffs seek leave to amend based on information obtained in discovery which was not known to them at the at the time of filing of their First Amended Complaint. Granting leave to amend here will neither upset any dispositive motions, nor change Plaintiffs' prevailing theories of liability under the TCPA. (Nor, as stated above, will extensive additional discovery be required.) Ultimately, if Kingdom Ministries and Robert Seibel are added as defendants, all defendants in this action should be liable for the exact same number of phone calls made in alleged violation of the TCPA—liability would merely be shared between four parties instead of two. The defendants would still have ample opportunity to respond to Plaintiffs' allegations before trial, which remains a significant ways away in this case. *Contra Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992) (substantive amendments shortly before trial are disfavored) (citation omitted).

Accordingly, the proposed amendments will not unduly prejudice Defendants.

### C.   Plaintiffs' Amendment Is Not Futile.

Leave to amend a complaint should only be granted if the proposed amendment is not futile. *Huon*, 2012 WL 1932120, at *3. A proposed amendment is futile if proposed additional claims or defendants could not survive a motion to dismiss. *Id.; Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004) (internal quotation omitted) ("[A] court may deny leave to amend if the proposed amendment … could not survive a [] motion to dismiss.")

Here, Plaintiffs allege that the proposed additional defendants are alter egos of the current Defendants and should be held equally liable for their conduct. (*See* Ex. 1, "SAC" at ¶¶ 37-53.) To establish that a person or entity is another's "alter ego" for purposes of veil-piercing liability, a plaintiff must establish that "it is so controlled and its affairs so conducted that it is a mere

14

instrumentality of another, and it must further appear that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice."*Johnke v. Espinal-Quiroz*, No. 14-cv-6992, 2017 WL 3620745, at *7 (N.D. Ill. Aug. 23, 2017). Other factors to consider include a failure to adhere to corporate formalities, failure to maintain an arm's length distance among related parties or entities, and whether the corporation is really a "sham" or shell. *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 419 F.3d 594, 597–98 (7th Cir. 2005) (when one entity is "a shell" for another entity, a party is "entitled to pierce the corporate veil" because "the corporation was not a separate entity"); *see also Dimmitt & Owens Fin., Inc. v. Superior Sports Prod., Inc.*, 196 F. Supp. 2d 731, 738 (N.D. Ill. 2002); *Wachovia Sec., LLC v. Neuhauser,* 528 F. Supp. 2d 834, 856 (N.D. Ill. 2007); *Boudreau v. Gentile*, 646 F. Supp. 2d 1016, 1023 (N.D. Ill. 2009).

Evidence obtained during discovery—discussed in Section I, *supra*—illustrates why Kingdom Ministries' corporate veil should be pierced: it is a sham entity existing purely for the benefit of Defendants MJM and Jordan, as well as Robert Seibel. *See Wachovia,* 528 F. Supp. 2d at 856 ("failure to maintain arm's length relationships among related entities" justifies piercing the corporate veil). First, Kingdom Ministries owned and held events at the mansion located at 12220 NW 68th Court, Parkland, Florida where Defendant Jordan lives ████████████ ████. (Ex. 16, Yakim Jordan Tax Returns; Ex. 9, Besley Dep. 127:8–13.) This property was recently sold at a major loss to a company, RAS Realty, formed and solely controlled by recently-removed Kingdom director and secretary (and Defendants' attorney) Robert Seibel, just one week after Kingdom Ministries received Plaintiffs' subpoenas. (Ex. 15, 12220 NW 68th Ct. Property Records.) This transaction took place without the knowledge of Kingdom's other board members, and in violation of its own corporate bylaws. (Ex. 15, 12220 NW 68th Ct. Property

15

Records; Ex. 18, Kingdom Bylaws; Ex. 9, Besley Dep. 130:2–131:6). Such blatant blending of MJM's, Kingdom's, Seibel's, and Jordan's business affairs justifies piercing the corporate veil.

Second, Kingdom Ministries' activities (or lack thereof) and failure to adhere to corporate formalities also demonstrate its "sham" existence and support piercing the corporate veil. *Dimmitt*, 196 F. Supp. 2d at 738; *Boudreau*, 646 F. Supp. 2d at 1023 (failure to adhere to corporate formalities justifies piercing the corporate veil). Kingdom Ministries has been unable to adduce a single piece of evidence to demonstrate that it operates as an actual "ministry"—it hosts no verifiable public events; its website provides no real information or services for visitors, other than an easy method for making donations to Kingdom; it owns no church and holds no services; and it has no real social media presence, or any other discernable public presence. (Ex. 13, Kingdom Website Screen Captures and Related Photos; Ex. 6, Besley Dep. 13:2–8, 79:12–14, 96:1–97:17.) The company's own secretary and director could not even answer the most basic questions about its activities, to the extent it has any. *See* Section II.C, *supra*.

At the corporate level, Kingdom's activities have seemingly been limited to approving a single property transaction—in a vote that occurred without a quorum of directors (though including Robert Seibel) or proper notice, violating Kingdom's own bylaws—and dealing with several legal documents. (*See* Ex. 9Kingdom Board Meeting Records; Ex. 18, Kingdom Bylaws.) Its board has, in its two years of existence, met infrequently and failed to pursue any known activities related to its stated mission. (*See generally* Ex. 8, Kingdom Board Meeting Records.) But despite this lack of both corporate and real-world activity, Kingdom Ministries took in over $3 million in revenue from January 2016 to July 2017—extraordinarily above average for a church of its size—and had over $1 million in expenses. (Ex. 14, Kingdom Profit & Loss Statements.; Ex. 9, Besley Dep. 39:9–40:15.) Kingdom's corporate representative had no

16

explanation for where the vast majority of this money came from, or where it went. (Ex. 9, Besley Dep. 88:11–93:12, 97:18–25, 99:13–102:22, 103:9–104:1.) This alone demonstrates the sham nature of Kingdom Ministry's enterprise, and justifies piercing the corporate veil.

Third, Kingdom Ministries' CFO until very recently, Robert Seibel, is also one of Defendants' attorneys in the underlying case. Defendant Jordan himself testified that Mr. Seibel has power of attorney with respect to all of his affairs (Ex. 3, Jordan Dep. 125:5–14), and Jordan's father testified in his affidavit that Jordan "relied upon the guidance of…Seibel" for "business affairs," and that Seibel was "in control of the business affairs of Manasseh Ministries." (Ex. 5, Bernard Jordan Aff., at ¶¶ 3–7.) This justifies piercing MJM's veil, demonstrating that it is merely Seibel's instrument, used to violate the TCPA for monetary gain. But this statement by the elder Jordan would appear to be true of Kingdom Ministries, as well, in light of Seibel's ability to sell a mansion owned by the entity at a massive loss, without notifying Kingdom's full board or voting with a quorum present. Such a failure to maintain an arm's length relationship between these entities, as well as the total dominance Seibel has exhibited over MJM and Kingdom, justifies piercing their corporate veils, as well.

Finally, irregularities on Kingdom's website also demonstrate that Kingdom is a sham entity. Until recently, Kingdom Ministries' website bore the same contact phone number and contact address as MJM. (Ex. 13, Kingdom Website Screen Captures and Related Photos, at 16.) An August 2016 screen capture from Kingdom Ministries' website lists the contact entity as "David Few Jordan Ministries" for donations, and includes explicit references to Yakim Manasseh Jordan. (*Id.*)[9] The URL "propetmanasseh.tv," owned by Jordan, directed to the

---

[9]     David Few, who is listed as Kingdom Ministries' CEO, maintains a LinkedIn account that, at one point, said he worked in "Experiential Marketing/ Event Planning" at "MJM" since 2014. (Ex. 6, Kingdom Social Media Screen Captures, at 2.) Jordan acknowledged Few's employment in a deposition. (Ex. 3, Jordan Dep. 108:18–109:6.)

Kingdom Ministries' website until recently. The remainder of the website appears to be a shell, containing an extremely limited calendar of Kingdom Ministries events with no description or information about the events provided; a photo gallery of churches not owned by or affiliated with Kingdom in any way; and no links to any relevant or operational social media pages. *(See generally id.*; Ex. 6, Kingdom Social Media Screen Captures at 2-5.)

In short, there is a wealth of evidence that Kingdom Ministries, Robert Seibel, and Defendants are each other's financial and operational alter egos. Allowing Defendants to continue this scheme would be deeply unjust, and further enable them to hide assets under the guise of Kingdom Ministries' corporate fiction at the direction of Robert Seibel and Defendant Jordan, all while claiming that they are too poor to negotiate a fair settlement and would be unable to satisfy a classwide judgment. *See Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 463–64 (7th Cir. 1991) (veil piercing justified "where the circumstances [are] such that an adherence to the fiction of a separate corporate existence promotes injustice or fraud") (internal quotations omitted). Thus, failing to join Kingdom Ministries and Seibel as alter egos of Defendants would allow perpetrators of a mass unsolicited telemarketing scheme to escape financial liability altogether.

## IV. CONCLUSION

For the reasons discussed herein, Plaintiffs Jeffrey Molitor, Laura C. De la Cabada, Steve Clarke, and Ruth Maki respectfully request that this Court enter an Order (i) granting their Motion for Leave to Amend, (ii) permitting Plaintiffs to file their proposed Second Amended Class Action Complaint, and (iii) granting such other and further relief as the Court deems equitable and just.

Dated: November 30, 2017           Respectfully submitted by:

                                 /s/ Benjamin H. Richman

                                 Benjamin H. Richman
                                 brichman@edelson.com
                                 Sydney M. Janzen
                                 sjanzen@edelson.com
                                 EDELSON PC
                                 350 North LaSalle Street, 13th Floor
                                 Chicago, Illinois 60654
                                 Tel: 312.589.6370
                                 Fax: 312.589.6378

                                 Joseph I. Marchese (*Pro Hac Vice*)
                                 jmarchese@bursor.com
                                 Philip L. Fraietta (*Pro Hac Vice*)
                                 pfraietta@bursor.com
                                 BURSOR & FISHER, P.A.
                                 888 Seventh Avenue
                                 New York, New York 10019
                                 Tel: 646.837.7150
                                 Fax: 212.989.9163

                                 *Counsel for Plaintiffs and the Proposed Class*

19

## <u>CERTIFICATE OF SERVICE</u>

I, Benjamin H. Richman, an attorney, hereby certify that on November 30, 2017, I served the above and foregoing ***Memorandum in Support of Plaintiffs' Motion for Leave to Amend and File Second Amended Class Action Complaint***, by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Benjamin H. Richman